United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NETSKOPE, INC.,

Plaintiff,

v.

FORTINET, INC.,

Defendant.

Case No. 25-cv-02360-HSG

**ORDER GRANTING MOTION TO SEVER, DENYING MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS, AND DENYING MOTION TO SEAL**

Re: Dkt. No. 156, 161, 162, 165

Pending before the Court are Plaintiff Netskope, Inc.'s motion to sever Defendant Fortinet, Inc.'s counterclaims, Dkt. No. 156, Netskope's motion for leave to amend infringement contentions, Dkt. No. 162, Netskope's administrative motion to seal another parties' material, Dkt. No. 161, and Fortinet's administrative motion to seal, Dkt. No. 165. The Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted. *See* Civil L.R. 7-1(b). The Court **GRANTS** the motion to sever, **DENIES** the motion for leave to amend, and **DENIES** the motions to seal without prejudice.

## I. BACKGROUND

The complaint in this case was filed in March 2025, asserting infringement of nine patents by Fortinet's products FortiGate ('336, '710, '153 Patents), FortiAP ('336, '710 Patents), FortiOS ('639, '697 Patents), FortiAuthenticator ('426 Patent), FortiWeb Cloud ('936 Patent), and FortiEDR ('936 Patent). *See* Dkt. Nos. 1, 29.

Netskope served its infringement contentions on July 1, 2025, and Fortinet provided its invalidity contentions in mid-August. Dkt. No. 164-1 ¶ 1–2, Dkt. No. 164-2. Fortinet made source code available for its products beginning on August 16, but it took until September 23 for the parties to agree on a protective order. Dkt. No. 164-1 ¶ 3; Dkt. No. 50. Netskope inspected that source code for the first time on October 10, 2025, then again on January 27, March 4–6, 13,

16–17, 23–27, and March 30–April 2, 2026. Dkt. No. 164-6 at 2–5.

On October 15, 2025, Fortinet sent Netskope an infringement deficiency letter, to which Netskope did not respond until December 2. Netskope represented that it would provide updated infringement contentions by December 15. Dkt. No. 164-5 at 3. Throughout that period, the litigation continued and proceeded toward claim construction.

Since Netskope's complaint asserted 176 claims across nine patents, Fortinet moved to brief additional terms for construction. Dkt. No. 51. Netskope opposed the motion, arguing that "while Netskope will present terms for construction in the claim construction briefing, each of those terms reflects a dispute raised by Fortinet. In other words, of the ten terms to be briefed, all ten stem from Fortinet's challenges—meaning Fortinet has effectively already received double the number of claim terms for construction." Dkt. No. 58 at 5. Still, Netskope acknowledged that even picking ten terms required Fortinet not to brief sixteen of its contested terms. *Id.*

That dispute came to a head at a December 9 hearing, where the Court ordered the parties to "identify representative claims or otherwise narrow the case[']s scope." Dkt. No. 116. After the hearing, Netskope represented to Fortinet that it would amend its infringement contentions "in due course" in light of the narrowing. Dkt. No. 164-5 at 2. Netskope agreed to drop four claims from the '936 Patent, two claims from the '697 Patent, and all claims from the '282 Patent, but did not identify any representative claims. Dkt. No. 118 at 2.

Based on Netskope's initial infringement contentions and the slightly narrowed case, ten terms were selected for claim construction. *See* Dkt. No. 121 at 2–3. Netskope at the time represented the following: "As a result of Netskope's case-narrowing efforts, two of Netskope's previously proposed terms for construction were removed. Fortinet agrees that Netskope's third and final additional term, 'service provider network,' is among the identification of most significant and dispositive terms. Accordingly, Netskope no longer proposes any additional terms for construction. Of the ten terms to be briefed, all ten stem from Fortinet's challenges." *Id.* at 2 n.1 (emphasis removed).

The parties completed the claim construction briefing, tutorial, and hearing. Dkt. Nos. 121, 123, 130, 132, 141. As of February 13, 2026, the Court took the dispute under submission.

Dkt. Nos. 142, 145.

On March 27, 2026, the parties filed a stipulation with proposed order to sever Fortinet's counterclaims, but only suggested that "[t]he Court will instruct the parties how to effectuate severance." Dkt. No. 152 at 3. In response, the Court held a case management conference on April 7 and ordered the parties to file briefs clarifying their positions on how severance would work as a practical matter. Dkt. No. 155. Netskope filed a motion on April 14, Dkt. No. 156, and Fortinet responded, Dkt. No. 159.

## II. MOTION TO SEVER

Rule 21 provides that the Court may "sever any claim against a party." In exercising discretion whether to sever a claim, courts consider "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Burden v. Serafin*, No. 22-CV-03479-DMR, 2022 WL 20113300, at *3 (N.D. Cal. Nov. 14, 2022).

Civil Local Rule 3-3(a) provides that "upon the filing of any civil action and its assignment to a division of the Court pursuant to Civil L.R. 3-2, the Clerk shall assign it to a Judge pursuant to the Assignment Plan of the Court," or the court's randomized assignment plan. When a new civil action is filed and related to an action pending before a judge, the court may transfer the action to that judge. Civil L.R. 3-3(c).

The parties agree to sever the counterclaims into a separate action. Dkt. Nos. 152, 156, 159. The only dispute is whether the new case should be randomly reassigned under this district's assignment plan or whether the undersigned should retain the new matter. Dkt. No. 159 at 4. The parties acknowledge that this decision is within the Court's discretion either way. *Id.*

The Court finds that the interests of justice and judicial economy weigh in favor of it handling the severed new case. *See Lesnik v. Eisenmann SE*, No. 16-cv-01120, 2018 WL 10911942, at *1 (N.D. Cal. June 19, 2018). This Court has invested substantial time and resources in these parties and their disputes, *see generally* § I, and a single judge retaining the cases will

foster efficient case administration and final resolution. Neither party contends that it would be prejudiced if the Court retained the severed claims, and Netskope confirms that it would not object to such outcome. Dkt. No. 156 at 18 n.3.

The Court **GRANTS** Netskope's motion to sever Fortinet's counterclaims but will retain jurisdiction over the new case. Dkt. No. 156.

## III. MOTION TO AMEND INFRINGEMENT CONTENTIONS

### A. Legal Standard

The Patent Local Rules permit amendment to initial infringement allegations "only by order of the Court upon a timely showing of good cause." Patent L.R. 3-6. "[A]bsent undue prejudice to the non-moving party," good cause may be demonstrated through, among other things, "(b) [r]ecent discovery of material, prior art despite earlier diligent search; and (c) [r]ecent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." *Id.* The "good cause inquiry is two-fold: (1) whether the moving party was diligent in amending its contentions; and (2) whether the non-moving party would suffer prejudice if the motion to amend were granted." *Wisk Aero LLC v. Archer Aviation Inc.*, No. 3:21-cv-02450-WHO, 2022 WL 5007912, at *2 (N.D. Cal. Oct. 4, 2022). "Diligence is 'the critical issue' in the good cause determination." *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No, 14-cv-00876-RS (JSC) (N.D. Cal. Dec. 21, 2016) (quoting *Sunpower Corp. Sys. v. Sunlink Corp.*, No. C08-02807 SBA (EMC), 2009 WL 1657987, at *1 (N.D. Cal. June 12, 2009). "The moving party has the burden to establish diligence," which may end the inquiry. *Wisk*, 2022 WL 5007912, at *2. But "the court has discretion to grant leave to amend 'even in the absence of diligence so long as there is no prejudice to the opposing party.'" *Id.* "Prejudice can be shown when there will be disruptions to the case schedule or other court orders, and when a party changes its infringement theories or requires its opposition to prepare additional defenses . . . ." *Id.* "Extra work alone does not support a finding of prejudice." *Id.* (citation omitted).

"The rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Radware Ltd. v. F5*

*Networks, Inc.*, No. C-13-02021-RMW, 2014 WL 3728482, at *2 (N.D. Cal. 2014). "However, the expectation that a patentee would have a precise sense of its infringement theory at the outset' is unrealistic where the patentee may not have been able to get access to the necessary information because it is hidden from view (for example, source code)." *Id*. (quotation omitted). "Thus, the good cause standard of Patent L.R. 3–6 'serves to balance the parties' rights to develop new information in discovery along with the need for certainty in legal theories at the start of the case.'" *Id*. (citation omitted).

**B. Discussion**

Netskope argues that it was diligent in amending its infringement contentions, and that Fortinet has failed in any event to show any prejudice would result from granting the amendment. Fortinet disagrees with both premises. The Court agrees with Fortinet and **DENIES** the motion.

**i. Diligence**

Netskope suggests that it acted with reasonable diligence in filing its motion given the voluminous source code that Fortinet produced, the deficiency letter Fortinet sent in response to their initial infringement contentions, and the discovery that charts were inadvertently omitted from several of their asserted claims. Dkt. No. 162 at 7–8, 11–12. Fortinet argues that Netskope was not diligent in reviewing the source code, says that many of the proposed contentions could have been made in Netskope's original filing because they rely on public material, and contends that Netskope should have known of the omissions much earlier based on the procedural history. Dkt. No. 164. The Court agrees with Fortinet and finds that Netskope was not diligent in seeking to amend its infringement contentions.

Fortinet's October 15, 2025 deficiency letter does not justify Netskope's lack of diligence. Netskope notes that Fortinet served the letter fifteen weeks after it served its initial infringement contentions, but it took Netskope nearly seven weeks to acknowledge the deficiency letter, Dkt. No. 164-5 at 1, and another 22 weeks after that for Netskope to file this motion. Dkt. No. 162. Throughout those 29 weeks, Netskope appears to have repeatedly assured Fortinet that amended infringement contentions were forthcoming and that it was diligently working to address the alleged deficiencies, but it then proceeded through claim construction briefing without any

amendment. *See, e.g.,* Dkt. No. 164-5 at 3 (December 2, 2025: "We are preparing our response to your letter and anticipate providing a reply, along with updated infringement contentions, by December 12, 2025."); Dkt. No. 164-5 at 2 (December 12, 2025: "In light of Netskope's ongoing evaluation, we are revisiting our response to your letter regarding the preliminary infringement contentions, and we will respond in due course"); Dkt. No. 164-7 at 2 (March 19, 2026: providing inadvertently omitted dependent claims from '697 Patent contentions with indication that more amendments were forthcoming). This was not diligent. *See CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 202 (N.D. Cal. 2009)

Netskope also was not diligent in discovering the inadvertent omissions from its initial infringement contentions. Netskope first alerted Fortinet of the omissions in a March 19, 2026 email. Dkt. No. 162 at 8; Dkt. No. 164-7 at 2.[1] But between that email and Fortinet's deficiency letter, the parties had negotiated narrowing the disputes in the case, selected claims for construction, and briefed and argued claim construction, all while Netskope assured Fortinet that it was "preparing our response" and evaluating the initial infringement contentions. *See, e.g.,* Dkt. No. 164-5 at 3. Netskope did not need the voluminous source code to discover the missing portions of its infringement contentions. It should have discovered those missing contentions long before it raised them with Fortinet's counsel.

Netskope's review of Fortinet's source code further reflects its lack of diligence. Fortinet made the source code available to Netskope following the September 23, 2025 stipulation, but Netskope performed the vast majority of its review in March 2026, six months later. Netskope provided no explanation for the substantial gaps between its first review in October 2025, its second review in January 2026, and the majority of the review in March 2026. The issue in assessing diligence is not when a party actually discovered information but "whether [the party] could have discovered [the information] earlier had it acted with the requisite diligence." *Google, Inc. v. Netlist, Inc.*, No. C 08-4144 SBA, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010).

---

[1] Netskope cites Exhibit F to its motion for this premise, but neither the exhibit nor its description provides any insight into Netskope's diligence. *See* Dkt. No. 162-1 ¶ 14 ("a true and correct copy[sic] between counsel for Fortinet and counsel for Netskope regarding Netskope's claim chart for the '697 patent.").

Netskope has not persuasively explained why it waited so long to conduct the vast majority of the code review, and thus fails to show that anything discovered in that untimely review supports their request to amend.

Netskope argues that the volume of Fortinet's source code made it impractical to amend its contentions earlier. But as Fortinet points out, Netskope's amendments do not refer to the fine details of the source code, which could potentially be characterized as honing its theories. Instead, the proposed amendments add directory level citations that sweep in vast portions of the code. Although citations to directories could be appropriate in some circumstances, such high-level citations do not provide any narrowing detail that reasonably would take six months to identify.

And even if Netskope had been diligent in reviewing the source code, Fortinet points out that many of Netskope's proposed amendments do not require source code, but were instead discoverable from public documents. Dkt. No. 164 at 9–15. Netskope's only argument in response is that it "believed its original contentions were sufficient," and now seeks only to "provid[e] additional specificity for its existing theories." Dkt. No. 173 at 10 & n.2.

The Court rejects this argument as well. Netskope's new infringement contentions do not simply add narrowing specificity. For at least the '936 Patent and the '710 Patent, Netskope accuses new products of infringement. *See* Dkt. No. 164 at 10–11, 13. Those additions, highlighted as responding to Fortinet's deficiency letter, expand Netskope's theories. Dkt. No. 164 at 10. Further, those theories were available to Netskope when it filed its initial infringement contentions, since they rely on public materials. *Id.* at 10, 13. *See also* Dkt. No. 161-2 at 2, 6, 12, 15 (amending '426 Patent claim chart with public materials); Dkt. No. 161-3 at 2, 12, 14–18, 22, 29 (amending '697 Patent claim chart with public materials).

While the Court has discretion to permit an amendment when the movant fails to show diligence, it is not required to do so. *See Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-2965-MCC (DMR), 2016 WL 6610344, at *2 (N.D. Cal. Nov. 9, 2016). Here, Netskope's lack of diligence is fatal to its motion for leave to amend.

**ii. Prejudice**

Netskope argues that Fortinet cannot claim any prejudice from the proposed amendments

since there are no future deadlines, including for the close of discovery. Dkt. No. 156 at 12–13. Fortinet counters that the amendments would be prejudicial because the omitted dependent claims would require Fortinet to amend its invalidity contentions, the new contentions accuse two new products of infringement, and Fortinet was forced to prioritize terms for construction based on Netskope's current infringement contentions. Dkt. No. 164 at 23–26. The Court agrees with Fortinet.

The procedural history supports denial of Netskope's motion. While it is true that there are no pending deadlines at this time, that is only true because the Court has the fully briefed and argued claim construction dispute under submission. While Fortinet's authorities do not address this specific stage of litigation, *Dynetix Design Sols. Inc. v. Synopsys Inc.,* No. CV 11-05973 PSG, 2012 WL 6019898, at *3 (N.D. Cal. Dec. 3, 2012) (after claim construction order), and *Netlist, Inc.*, 2010 WL 1838693 (same), they are nonetheless persuasive for the general premise that an amendment after the parties have committed to and submitted their claim construction positions is inherently prejudicial. *Netlist*, 2010 WL 1838693 at *3. Amendment at this point would require the parties and the Court to start the claim construction process over, which would substantially waste resources and further delay final resolution of this case.

The procedural history of this case shows how reopening the claim construction process would impose a particular burden on Fortinet. Prior to claim construction (and long after Netskope had access to Fortinet's source code), Fortinet sought construction of additional terms because Netskope's infringement contentions concerned 176 claims across nine patents. Dkt. No. 51 at 4. Netskope opposed that motion. Dkt. No. 58. As Netskope acknowledged at that time, Fortinet proposed 55 substantive constructions, which were narrowed to 26. *See id.* at 5. Even with expanded claim construction briefing, Fortinet could not present all of those issues to the Court.

Instead of agreeing to construe more terms, the Court ordered the parties to identify representative claims and narrow the scope of the case. Dkt. No. 116. Netskope did not identify representative claims, but narrowed the case to 135 claims and eight patents. Dkt. No. 118; Dkt. No. 121 at 3 n.2. From that slightly narrowed position, Fortinet chose ten terms that it determined

were "likely to be most significant to resolving the parties' dispute," Patent L.R. 4-1(b), only because Netskope proposed none. Dkt. No 121 at 3 n.2. The selection of those terms was a critical step in the litigation. And Fortinet plausibly explains why it might have chosen differently in December had it known of Netskope's amendments. Several limitations contained in Netskope's new infringement contentions would need to be construed, Dkt. No. 164 at 24, and the amendment would also affect terms that were already briefed at claim construction. *Id.* at 24–25. While Netskope is correct that "[c]laim construction does not turn on infringement contentions," Dkt. No. 173 at 8, the infringement contentions clearly have some bearing on how a party frames its constructions and on the priority it places on given terms. Fortinet has thus shown that at least some prejudice would result from allowing amendment of the infringement contentions now. *See Dynetix*, 2012 WL 6019898, at *3 (denying motion for leave to amend infringement contentions because of prejudice related to choices about construction of terms).

***

Netskope's motion for leave to amend infringement contentions is **DENIED**. Dkt. No. 162.

## IV. MOTIONS TO SEAL

Netskope filed an Administrative Motion to consider whether Fortinet's material contained in its Motion to Amend its Infringement Contentions should be sealed, Dkt. No. 161, to which Fortinet responded. Dkt. No. 163. Fortinet filed under seal its opposition and its Exhibit 13 under seal. Dkt. No. 165. The Court **DENIES** the motions without prejudice.

### A. Legal Standard

Records attached to nondispositive motions must meet the "good cause" standard of Rule 26(c) of the Federal Rules of Civil Procedure, as such records "are often unrelated, or only tangentially related, to the underlying cause of action." *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179–80 (9th Cir. 2006) (quotations omitted). This requires a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see also* Fed. R. Civ. P. 26(c). "Broad allegations of harm, unsubstantiated by specific

examples of articulated reasoning" will not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quotation omitted).

Civil Local Rule 79-5 supplements the standards set forth in *Kamakana*: the party seeking to file a document or portions of it under seal "must explore all reasonable alternatives to filing documents under seal, minimize the number of documents filed under seal, and avoid wherever possible sealing entire documents . . . ." Civil L.R. 79-5(a). The party must further explain the interests that warrant sealing, the injury that will result if sealing is declined, and why a less restrictive alternative to sealing is not sufficient. *See* Civil L.R. 79-5(c).

**B. Discussion**

Fortinet requests that Exhibits G, H, I, J and K to Netskope's motion remain under seal in their entirety because they contain highly confidential source code. "[I]f a sealing request is properly narrowly tailored, it will be relatively rare that an entire document will be sealable." *Miller v. RP On-Site, LLC*, No. 19-cv-2114-LHK, 2020 WL 8575601, at *5 (N.D. Cal. Nov. 25, 2020) (quoting *Hadley v. Kellogg Sales Co.*, No. 16-cv-4955-LHK, 2018 WL 7814785, at *3 (N.D. Cal. Sept. 5, 2018)); *see also* Civil L.R. 79-5(a) ("A party must . . . avoid wherever possible sealing entire documents (as opposed to merely redacting the truly sensitive information in a document)."); Civil L.R. 79-5(d)(1)(B) (requiring request to be "narrowly tailored to seal only the sealable material").

The exhibits Fortinet seeks to seal contain Netskope's claim charts. While some of the information contained in these documents likely is sealable source code, other parts of them contain publicly-available information. *See, e.g.,* Dkt. No. 161-2 at 5; Dkt. No. 161-3 at 2, 6; Dkt. No. 161-4 at 2–4, 7; Dkt. No. 161-5 at 3, 5, 8; Dkt. No 161-6 at 3–4, 6.[2] Crucially, one of Fortinet's arguments for denying Netskope's motion is that these documents contain public information that was available to it before the production of discovery in this case. Dkt. No. 164 at 11–15. And in the public version of its motion, Fortinet includes screen captures of two of the documents it seeks to seal in its entirety. *Id.* at 10, 13. Even under the good cause standard,

[2] These are only examples and any renewed motion to sela must address not only these examples but also any comparable information.

parties have an obligation to narrowly tailor their sealing requests. Civil L.R. 79-5(a). Fortinet has not limited its request to the material contained in Netskope's exhibits that will results in "specific prejudice or [that] harm will result" from its disclosure. *Phillips*, 307 F.3d at 1210–11.

Similarly, Fortinet seeks to seal in its entirety Exhibit 13 to its opposition brief. Dkt. No. 165. The document provides specific source code citations found in Netskope's infringement contentions, the size of each folder, and the number of files contained in each folder. Dkt. No. 165-3. Fortinet also seeks to narrowly redact references in its opposition brief to the number of files Netskope cited in its infringement contentions. Dkt. No. 165-2.

Fortinet's explanation for its sealing requests is inadequate. The Local Rules provide that "[r]eference[s] to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." Civil L.R. 79-5(c). Further, a motion to seal must contain specific information including "an explanation of (i) the legitimate private or public interests that warrant sealing; (ii) the injury that will result if sealing is denied; and (iii) why a less restrictive alternative to sealing is not sufficient." *Id.* at 79-5(c)(1). Fortinet's one-page motion accomplishes none of this. Dkt. No. 165. It explains that the material was designated confidential or highly confidential under the parties' protective order, and that the materials contain "highly confidential technical information about the operation of Fortinet's products and citations to Fortinet's highly confidential source code." Dkt. No. 165 at 2. But it never describes (even in a general sense) why the size of the files that Netskope cited and reviewed would be considered sensitive information, why the public disclosure of such information would harm Fortinet, and why redactions to the exhibits would not prevent the asserted harm. *Id.* The motion is **DENIED.** Dkt. No. 165.

While some of these materials may be sealable, counsel must do the work to explain the request. The Court **DENIES** the motions without prejudice. Dkt. No. 161, 165.

## V. CONCLUSION

Netskope's motion to sever is **GRANTED**. Dkt. No. 156. The Clerk of the Court shall open a new case with a separate case number for Fortinet's counterclaims. No additional filing fee is due. The new case shall be assigned to the undersigned, and this order shall be the first docket

United States District Court
Northern District of California

entry in the new case. Within seven days of this order, Fortinet is **ORDERED** to file an amended complaint in the new case.

Netskope's motion for leave to amend its infringement contentions is **DENIED.** Dkt. No. 162.

Netskope's motion to seal another parties' material and Fortinet's motion to seal are **DENIED** without prejudice. Dkt. No. 161, 165. Fortinet is **ORDERED** to refile its response to Netskope's motion, Dkt. No. 161, and its motion, Dkt. No. 165, within 21 days of this order.

**IT IS SO ORDERED.**

Dated: 8/18/2027

HAYWOOD S. GILLIAM, JR.
United States District Judge